## Everett v. Eckhart

*William H. Bayer,* for petitioners.
*Roger N. Nanovic, II,* for respondents.
*Holly A. Heintzelman,* for the child.

LAVELLE, *P.J.,* May 15, 1985—This case squarely raises the question whether adoption of a grandchild by the stepmother terminates the grandparents' visitation rights. We hold that it does not.

The facts are simply stated.

Petitioners Melvin S. J. Everett and his wife Anna C. Everett (hereafter grandparents) are the maternal grandparents of Marc Allan Eckhart, born January 13, 1972. Respondent Timothy Eckhart (hereafter father) is the natural father of Marc Allan Eckhart and Patricia Eckhart is the father's present wife and Marc's legal mother by adoption.

Marc Allan Eckhart was one of three children born to the marriage of Lori Everett and Timothy Eckhart. After his natural parents divorced, Marc remained with his father and the other two children remained with the mother. Both the mother and the father have since remarried.

In January of 1984, Lori Everett Eckhart voluntarily relinquished her parental rights to Marc. Marc was then adopted by his father's new wife, Patricia Eckhart.

The grandparents filed the instant petition for visitation in October of 1984, after his parents refused them visitation with Marc.

On February 26, 1985, the date set for hearing on the petition, respondents moved to dismiss the petition on the basis that petitioners had no standing to seek visitation.

The court, sua sponte, appointed Holly A. Heintzelman, Esq., as counsel for the child and simultaneously granted a continuance to allow attorney Heintzelman to prepare for the hearing. Because it seemed to be one of first impression, the court bifurcated the hearing and directed all counsel to initially address the legal question of whether or not the grandparents have legal standing to seek visitation. We have now had the benefit of briefs and oral arguments of all counsel on this issue.

## DISCUSSION

When we turn to the Custody and Grandparents Visitation Act, 23 P.S. §1001 et seq., which took effect on January 5, 1982, the question seems to have an easy answer. Visitation rights to grandparents are specifically allowable in three circumstances:

1. When a parent is deceased (23 P.S. §1012);

2. When the parents' marriage is dissolved (23 P.S. §1013); and

3. When the child has resided with grandparents for a period of 12 months or more (23 P.S. §1014).

In this case, the grandparents clearly fall within the second provision because the biological parents' marriage has been dissolved by divorce.

The complicating factor here, however, is the subsequent adoption of Marc by his stepmother. We must determine whether the termination of parental rights proceeding and the adoption have any effect on the grandparents' visitation rights.

The only section of the Grandparent Visitation Act, supra, which deals with the effect of adoption is section 15, which provides as follows:

"Sections 11, 12, 13 and 14 of this act shall not apply if the child has been adopted by a person other than a stepparent or grandparent. Any visitation rights granted pursuant to this section prior to the adoption of the child shall be automatically terminated upon such adoption." 23 P.S. §1015.

A clear reading of the first sentence is that grandparent visitation shall not be allowed if the child has been adopted by a person *other than a stepparent* or grandparent.

By inserting this provision, we believe the Pennsylvania legislature acknowledged its awareness of the problem raised in this case and the impact of adoption on grandparents' visitation rights. In its collective wisdom, it decided that there was a need to cut off all grandparents' ties with the child and allow the child to begin a new life when the child was adopted by nonfamily persons. By automatically terminating grandparents' past and present visitation rights, the legislature evinced a clear intent to protect from interference by grandparents adoptions by strangers to the blood or by marriage.

This same provision persuades us beyond any doubt that the legislature did not intend to deprive grandparents of visitation rights it granted in section 12, 13 and 14 of the act. If it intended to terminate grandparents' rights of visitation after adoption, it could have simply eliminated from section 15 the words "by a person other than a stepparent or grandparent." By adding those words, the legislature, in our view, made a positive declaration that where the adoption is not by a stranger, all the family ties which the child has had in the past are not going to be automatically terminated. In other

words, if grandparents fall into one of the three categories in section 12, 13 and 14 of the act, adoption by a stepparent or grandparent shall not terminate their visitation rights.

We therefore hold that petitioners grandparents have a statutory right and standing to seek visitation with their grandson Marc despite his adoption by his stepmother.

The next step must be to ascertain whether such visitation will be in Marc's best interests and will not unduly interfere with the child's relationship with his parents. Such a determination can only be made after a full hearing.

Accordingly, we issue the following

## ORDER

And now, this May 15, 1985, we direct that a hearing be scheduled for June 24, 1985 at 1:30 p.m., prevailing time, in courtroom number one of the Carbon County Courthouse. At that time we will take testimony as to whether Marc's best interest would be served by providing visitation with his grandparents.